IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |  |
|---|---|---|
| ANTHONY WARREN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:23-cv-01097-JDB-jay |
| | ) | |
| CHESTER COUNTY, TENNESSEE, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the motion of Defendant, Chester County, Tennessee ("Chester County"), for summary judgment as to all claims in Plaintiff's complaint. (Docket Entry ("D.E.") 33.) Plaintiff, Anthony Warren, has responded (D.E. 38) and Defendant has replied (D.E. 44). For the following reasons, Defendant's motion is GRANTED.

I.    Standard of Review

Federal Rule of Civil Procedure 56 provides, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute of material fact is genuine so long as 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Thacker v. Ethicon, Inc.*, 47 F.4th 451, 458 (6th Cir. 2022) (quoting *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020)). Stated differently, "[a] factual issue is genuinely in dispute if a reasonable factfinder could resolve it either way." *Jordan v. Howard*, 987 F.3d 537, 542 (6th Cir. 2021) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). To show a genuine dispute or lack thereof, "both parties are required to

1

either cite to particular parts of materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Richards v. State Farm Fire & Cas. Co.*, 585 F. Supp. 3d 1083, 1087 (W.D. Tenn. 2022) (quoting *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012)).

When determining whether summary judgment is appropriate, "courts are required to 'view the facts and draw reasonable inferences "in the light most favorable to the party opposing the summary judgment motion."'" *Shumate v. City of Adrian*, 44 F.4th 427, 438 (6th Cir. 2022) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). However, "credibility judgments and weighing of the evidence are prohibited." *Thacker*, 47 F.4th at 459 (quoting *Kirilenko-Ison*, 974 F.3d at 660). A plaintiff may not rest on allegations alone. *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1148 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 448 (2022). "[C]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment." *Jones v. City of Franklin*, 677 F. App'x 279, 282 (6th Cir. 2017) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). "[I]n order to defeat summary judgment, the party opposing the motion must present affirmative evidence to support [his] position; a mere 'scintilla of evidence' is insufficient." *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003)).

II.   Undisputed Facts

The following material facts are undisputed unless otherwise noted. In March of 2022, Plaintiff started a position with the Chester County Solid Waste Department ("Solid Waste") as a truck driver on a cardboard recycling route. (D.E. 38-1 at PageID 918.) The parties dispute whether Warren eventually became a full-time employee but do not dispute his at-will status. (*Id* at PageID

2

918–19; D.E. 45 at PageID 1075.)  His supervisors were Amber Greene, Director of Solid Waste, and Merrell Edgin, foreman for Solid Waste.  (D.E. 38-1 at PageID 918–19.)

      a. *Alleged Unpaid Overtime*

When Plaintiff began his employment with Defendant his pay was at a rate of $14.00 per hour.  (D.E. 38-1 at PageID 919.)  In the next pay period, his rate was increased to $14.50 per hour.  (*Id.*)  The parties dispute the reason for the increase.  (*Id.*)  Defendant claims Greene did not recall exactly what she had told Warren when he was hired but nonetheless authorized the fifty cent increase.  (*Id.*)  Plaintiff claims that he received the additional amount when he was moved to full-time status.  (*Id.*)

Rather than employees using a timeclock system, Solid Waste had their employees complete timesheets by hand.  (*Id.* at PageID 922.)  As this was the first time Warren had needed to fill out timesheets for a job, he received assistance from Greene and Solid Waste recycling coordinator Shelly Fesmire.  (*Id.* at PageID 922, 924.)  Defendant states that Warren had repeated difficulties with his timesheets, by erroneously marking his lunch break as time worked and including hours from past pay periods.  (*Id.* at PageID 922.)  Plaintiff responds that he filled out his timesheet "truthfully and honestly" and that counting the lunch break time was not an error, because he was told to work through lunch by his supervisor, Edgin.  (*Id.* at PageID 922–23.)  Defendant maintains that the foreman did not instruct Warren to work through his breaks.  (*Id.* at PageID 923.)  It is undisputed that Fesmire explained to Plaintiff that lunch breaks were unpaid.  (*Id.* at PageID 922.)

Greene also discussed lunch breaks with Plaintiff.  (*Id.* at PageID 922–23.)  According to Defendants, she instructed Warren that he must take a thirty minute lunch break and that his workday would begin at 7:30 to allow for this break.  (*Id.*)  She further stated that trash is "never-

3

ending" and that there was no such thing as being "caught-up" due to the nature of the work. (*Id.* at PageID 923.) Warren claims that Greene in fact said his timesheet had to reflect the thirty minute lunch break, regardless of whether he chose to work through it or not and that if he did, he still would not be paid for that time. (*Id.*)  It is undisputed that Plaintiff signed the Solid Waste employee handbook, in which it contains a policy of unpaid lunchbreaks. (*Id.* at PageID 924.) Eventually Greene began to fill out Plaintiff's timesheets herself. (*Id.* at 924–25.)  The parties dispute whether Greene made some adjustments to the timesheets without Warren's knowledge but do agree that some of her adjustments resulted in him receiving additional pay. (*Id.*)  Warren confirmed to Greene on multiple occasions that the changes she had made were correct. (*Id.* at PageID 926.)

In addition to pay owed for lunch breaks he worked through, Plaintiff alleges that the volume of cardboard produced by Chester County schools at the end of the school year required him to work overtime. (*Id.* at PageID 927.)  He further claims that Edgin told him he could not complete all of the work done in his set hours. (D.E. 45 at PageID 1078.)  Defendant responds that Warren's timesheets reflect that he never worked full-time hours, let alone overtime, and that Edgin testified that no employee, including Warren, was required to work overtime. (D.E. 38-1 at PageID 927; D.E. 45 at PageID 1078.)  Warren maintains that his timesheets were filled out by Greene and do not reflect the actual number of hours he worked. (D.E. 38-1 at PageID 927.) He contends that the timesheets he originally turned into Greene showed more than 40 hours worked. (D.E. 45 at PageID 1079; *see also* D.E. 34 at PageID 238–41.)  In his deposition, Plaintiff testified that when he discovered he had not been paid overtime for this work, he approached Greene and told her he was entitled to additional pay. (D.E. 34 at PageID 239.)  Warren submits that Greene informed him that budget constraints would not allow for overtime pay. (*Id.* at PageID 240.)

4

Defendant disputes this, stating that it was Warren's misunderstandings regarding Solid Waste's payroll system that "led him to believe that budget constraints were why he was allegedly owed unpaid overtime wages." (D.E. 45 at PageID 1080.) Nonetheless, Plaintiff admitted in his deposition that he had been paid for all that he told Chester County he was owed. (D.E. 34 at PageID 363.)

      b. *Alleged Incidents of Insubordination*

On June 1, 2022, Fesmire attempted to assist Plaintiff with his timesheet. The parties dispute the particulars of this interaction. (D.E. 38-1 at PageID 930–32.) According to Defendant, as Fesmire was helping Warren, the Plaintiff became angry, speaking loudly and using profanity. (D.E. 38-1 at PageID 930.) Greene called Edgin to come to the office because she and Fesmire were the only women there "and they were frightened by Plaintiff's angry and erratic behavior." (D.E. 38-1 at PageID 930; D.E. 34-1 at PageID 496.) Edgin claims he could hear Warren "yelling and swearing" in the background of the phone call. (D.E. 38-1 at PageID 931; D.E. 34-4 at PageID 667.) Another Solid Waste employee, Thomas Reed[1], also observed Warren yelling and swearing during this interaction. (D.E. 38-1 at PageID 931–32; D.E. 33-5 at PageID 134–35.) Following this incident, Greene prepared a verbal write-up for Plaintiff's use of inappropriate language. (D.E. 38-1 at PageID 932; D.E. 34-7 at PageID 882.) Warren denied that he yelled or swore during this interaction and states that he never received a verbal or written warning following it. (D.E. 38-1 at PageID 930–31; *see also* D.E. 34 at PageID 331–34.) Fesmire likewise testified to Warren's aggravation but not to his yelling or swearing. (D.E. 38-1 at PageID 930–32; D.E. 34-5 at PAgeID 778.)

---

[1] Plaintiff moves the Court to strike Reed's affidavit because "Defendant did not disclose Thomas Reed as a witness in its initial disclosures or any discovery responses." (D.E. 38-1 at PageID 931.) Defendant points out that it was Plaintiff who identified Reed as a person having information relevant to the complaint in his discovery responses. (D.E. 44 at PageID 1040; D.E. 44-1 at PageID 1046–47.) Plaintiff's motion to strike is DENIED.

On June 10, 2022, a Friday night, Warren called Greene on her cellphone while she was in her vehicle with her children. (D.E. 38-1 at PageID 932.) Warren included his wife on the phone call and both spoke with Greene about his timesheets. (*Id.*) Greene alleged that Warren "lost his temper," called her a "bitch," and that Greene's children overheard this. (*Id.* at PageID 932–33; D.E. 34-1 at PageID 524.) Plaintiff denied using such language but contended that he told Greene he believed not paying overtime hours worked "was against the law". (D.E. 38-1 at PageID 932–33; *see also* D.E. 34 at PageID 265, 354; D.E. 45 at PageID 1080.) After this call, Greene contacted Plaintiff's supervisor, Edgin, and spoke with him about Plaintiff's behavior. (D.E. 38-1 at PageID 933.) Edgin testified at his deposition that Greene told him Warren "had spoken very harsh and that her kids was [sic] present and that she—she didn't appreciate it and that she was going to call him in and let him go." (D.E. 34-4 at PageID 697.)

The following Monday, June 13, Greene and Warren met in her office.[2] (D.E. 38-1 at PageID 935.) Defendant avers that Greene arranged the meeting; Plaintiff responds that Edgin took him to Greene's office after he complained to Edgin about not getting paid overtime. (*Id.*; D.E. 45 at PageID 1081–82.) During the meeting, Greene asked Warren how much overtime he was owed and he responded that he would need to review his timesheets. (D.E. 38-1 at PageID 935–36; D.E. 45 at PageID 1083.) Greene asked if those were all the hours he needed and when Warren told her that he thought it was, Greene replied, "Well I'll make sure you get these hours. And as of now, we no longer need you."[3] (D.E. 34 at PageID 254; D.E. 45 at PageID 1083.) Greene handed Plaintiff his separation notice and he left her office. (D.E. 45 at PageID 1083.)

---

[2] Defendant submitted a recording of this termination to the Court, which the Plaintiff claims was not disclosed until mediation. While Defendant has stated in its reply that "[a]ny reference to the mediation between the parties in the instant action is inadmissible" (D.E. 44) and has filed a motion in limine arguing the same (D.E. 49), it does not appear to the Court that Defendant is contending that the recording itself is inadmissible.

[3] The parties do not dispute that Greene said this; however, in the recording of the conversation provided to the Court, it appears that after Greene asked Warren to confirm all the time he was owed, Greene then replied, "I'm letting you go at will. We don't need you any longer." (D.E. 43.)

6

Warren returned shortly thereafter to inquire about the reason for his termination as that section on his separation notice was left blank. (D.E. 34 at PageID 254–55; D.E. 45 at PageID 1084.) Greene advised Plaintiff that he could tell potential employers that "lack of work" was the reason. (D.E. 45 at PageID 1084.) According to Warren, Edgin approached him in the parking lot following the meeting and apologized, offered to serve as a reference, told Plaintiff to tell employers to call him and not Greene, and said Plaintiff had done a good job. (*Id.* at PageID 1085.) Defendant disputes this account, stating that Edgin neither apologized to Warren nor offered to serve as a reference. (*Id.*)

The parties disagree about which individuals were involved in the decision to fire Plaintiff. According to Defendant, Greene informed Mayor Hutcherson that she would be dismissing Warren and he responded, "If you think that's the right decision, then I trust you to make that decision." (D.E. 45 at PageID 1087.) Additionally, Defendant points to Greene's deposition testimony where she related that both Edgin and Mayor Hutcherson were involved in the decision. (*Id.* at PageID 1087–88.) In contrast, Plaintiff refers to Mayor Hutcherson's deposition testimony where he stated he did not learn of the dismissal until after it happened. (D.E. 45 at PageID 1087.)

    c. *Solid Waste Budget*

In addition to the alleged incidents of insubordination, Defendant has cited budget constraints as a reason for Plaintiff's termination. (D.E. 33-1 at PageID 101, 110, 114.) In March of 2022, Greene and Edgin learned that Solid Waste would be subject to an $80,000 budget cut for the next fiscal year. (D.E.38-1 at PageID 919–20.) When testifying at a deposition in her role as Solid Waste's designated representative, Greene explained the budget cut was due to the loss of a nursing home account, resulting in the inability of Solid Waste to pay its landfill bill. (D.E. 34-2 at PageID 597–98.) As a result, the County Commission initiated a solid waste disposal fee, which

7

was collected during the 2021–2022 fiscal year and placed into Solid Waste's budget for the 2022–2023 year.  (*Id.* at PageID 600.)  However, the fee was insufficient to cover the shortfall from the nursing home closure and Solid Waste was expecting a loss of revenue of $191,825 for the 2022–2023 fiscal year.[4]  (D.E. 33-3 at PageID 132.)

III.   Analysis

The Fair Labor Standards Act, under which this lawsuit is brought, "proscribes retaliation by 'discharg[ing]' or otherwise 'discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act.'" *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 529 (6th Cir. 2011) (alterations in original) (quoting 29 U.S.C. § 215(a)(3)).  A plaintiff "may prevail upon a showing of either direct evidence of retaliation or circumstantial evidence of retaliation." *Mansfield v. City of Murfreesboro*, 706 F. App'x 231, 235 (6th Cir. 2017).

   a.   Direct Evidence

"[D]irect evidence is that evidence which, if believed, *requires* the conclusion that unlawful [behavior] was at least a motivating factor in the employer's actions." *Id.* (emphasis and alterations in original) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004)).  "Direct evidence proves the existence of a fact without any inferences or presumptions." *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003) (quoting *Norbuta v. Loctite Corp.*, 181 F.3d 102 (6th Cir. 1999)). Thus, for Plaintiff to prevail on a direct evidence theory, he must show "blatant

---

[4] The parties dispute whether a proposed exemption to the solid waste disposal fee was part of the budgetary constraints that Defendant asserts resulted in Warren's termination. Plaintiff maintains that the exemption was not formally presented to the County Commission until after Warren was fired, meaning there was no budgetary reason for firing him.  (D.E. 38-1 at PageID 920.)  Defendant submits that the exemption was adopted in June "as a culmination of a process lasting many months."  (D.E. 45 at PageID 1091.)  It appears to the Court from the record and video evidence submitted that while the exemption was not adopted until June, it had been discussed by the Solid Waste committee during their March 8 meeting and the County Commission was made aware of those discussions during the March 14 commission meeting.  (D.E. 38-5 at PageID 983; D.E. 43.)

remarks" which reveal the County's retaliatory intent and that the retaliatory intent was a motivating factor in the decision to terminate his employment. *Mansfield*, 706 F. App'x at 235–36 (citation omitted). Where a plaintiff establishes such evidence, "he may prevail without proving all the elements of a prima facie case of discrimination." *Adams v. Nature's Expressions Landscaping, Inc.*, Civil Case No. 5:16-cv-98-JMH, 2018 WL 4390721, *8 (E.D. Ky. Sept. 14, 2018) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)). Here, Plaintiff proposes two sets of direct evidence: (1) Warren's testimony that during the June 10 phone call with Greene he told her he believed it was illegal to not pay him for hours worked and (2) Greene's statement during the termination meeting, "Well, I'll make sure you get these hours. And as of now, we no longer need you." (D.E. 38 at PageID 906–07.) Defendant responds that Plaintiff's proffered evidence ignores both that Greene had already made the decision to terminate Warren following the June 10 phone call where he called her an obscene name and that Solid Waste's budgetary shortfall would have resulted in Warren's termination on June 30, irrespective of any alleged incidents of insubordination. (D.E. 44 at PageID 1036–37.)

Plaintiff's offerings do not constitute direct evidence. As to the first, direct evidence requires "blatant remarks" which demonstrate retaliatory intent and Warren offers no such statement made by Greene during the June 10 phone call. *Mansfield*, 706 F. App'x at 235–36 (citation omitted). The second offering "requires an inference of intent to reach the conclusion of unlawful motive." *Pettit*, at 534. Plaintiff infers that Greene was motivated by his complaints regarding overtime pay; it could also be inferred that Greene was motivated by the alleged incidents of insubordination or budget constraints. "The fact that an inference is required to get from the [statement] to [Greene's] motive disqualifies it as direct evidence." *Id.*

9

### b. Circumstantial Evidence

Because Plaintiff has not established direct evidence of retaliation, the Court turns to the burden-shifting framework of *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). Under this framework, a plaintiff must establish a prima facie case of retaliation. *Mansfield*, 706 F. App'x at 236. If he is successful, "the burden of production shifts [to the employer] to articulate a legitimate, non-retaliatory reason for the termination[]. If the [employer] satisfies the burden of production, the burden shifts back to [Plaintiff] to show that the reason was a pretext for retaliation. *Id.* (alterations in original) (quoting *Evans v. Prof' Transp., Inc.*, 614 F. App'x 297, 300 (6th Cir. 2015)). Though the burden of production shifts between the parties, the burden of persuasion remains with the plaintiff. *Id.* The Court must consider "whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000).

### i. Prima Facie Case of Retaliation

"To establish a prima facie case of retaliation' under [the] FLSA . . . 'an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to [him]; and (4) there was a causal connection between the protected activity and the adverse employment action.'" *Mansfield*, 706 F. App'x at 236 (quoting *Adair v. Charter Cnty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006)). Defendant asserts that Plaintiff has not satisfied elements one, two, and four of the prima facie case. (D.E. 33-1.)

### A. Protected Activity

An employee has engaged in protected activity under the FLSA when he has "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). It is well-

10

established in the Sixth Circuit that "[a]n informal complaint constitutes protected activity under the FLSA." *Ellis v. Yum! Brands, Inc.*, 556 F. Supp. 2d 677, 682 (W.D. Ky. 2008) (first citing *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004); and then citing *EEOC v. Romeo Comm. Schs.*, 976 F.2d 985, 989–90 (6th Cir. 1992)). An employee must subjectively believe his employer is engaging in unlawful conduct and that belief must be objectively reasonable. *Spiteri v. AT & T Holdings*, 40 F. Supp. 3d 869, 876 (E.D. Mich. 2014).

Defendant argues that Plaintiff's belief that he was denied overtime pay in violation of the FLSA is not objectively reasonable, because he conceded in deposition that his timesheets did not reflect working full-time hours, Greene confirmed the same, and Edgin testified that he never assigned Warren jobs that would require overtime. (D.E. 33-1 at PageID 91–92.) Plaintiff responds that Defendant ignores Warren's own testimony and asks the Court to engage in improper credibility determinations. (D.E. 38 at PageID 909.) While it would be unreasonable for an employee to complain about overtime pay when overtime hours were never worked, whether Warren worked overtime hours is at issue in this case. First, the parties dispute whether Warren achieved full-time status, which is required for him to receive overtime pay. Second, Warren maintains that his timesheets do not reflect the actual number of hours worked, despite testimony from Greene and Edgin to the contrary. These disputes alone create a genuine issue of fact regarding whether Warren had an objectively reasonable belief that he was denied overtime pay in violation of the FLSA.

Moreover, there is no question that filing a cause of action seeking overtime pay is an FLSA-protected activity. *Adair*, 452 F.3d at 489. Warren has alleged that he complained about not receiving overtime both to Greene and to Edgin. Although Defendant disputes these allegations, the Court is not permitted to weigh the credibility of evidence at the summary

11

judgment stage. Warren has set forth a genuine issue of fact as to whether he engaged in an FLSA-protected activity.

### B. Notice

In *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011), the United States Supreme Court explained the phrase "filed any complaint" in 29 U.S.C. § 215(a)(3) "contemplates some degree of formality, certainly to the point where the recipient has been given fair notice that a grievance has been lodged and does, or should, reasonably understand the matter as part of its business concerns." The Court further stated that a complaint may be oral or written but "[t]o fall within the scope of the antiretaliation provision, [it] must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Id.* Warren alleged he complained to both Greene and Edgin about not receiving overtime pay and further stated to Greene that he believed not paying overtime "was against the law." (D.E. 34 at PageID 246.) Defendant denies Warren made these complaints but further contends that any complaints alleged "stem[] from [Warren's] inability to understand [Defendant's] timesheets or payroll structure." (D.E. 33-1 at PageID 94.) Considering the facts in the light most favorable to Plaintiff, Defendant would have known that Warren was asserting his FLSA rights when he complained about not receiving overtime pay and asserted the same was against the law.

### C. Causation

First, a note of clarification. Defendant spends considerable time in its reply arguing that Plaintiff has relied on "irrelevant" non-FLSA case law in making its causation argument. (D.E. 44 at PageID 1037–38.) Defendant's argument perplexes the Court for two reasons. First, Defendant itself relies on non-FLSA case law for its argument regarding causation. (D.E. 33-1 at PageID 96–97 (first citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (a Title VII case);

12

and then citing *Spengler v. Worthington Cylinders*, 615 F.3d 481, 494 (6th Cir. 2010) (an ADEA case)). Second, the Sixth Circuit has relied on non-FLSA case law in FLSA cases, further undercutting Defendant's argument. *See, e.g.*, *Pettit*, 429 F. App'x at 533 (first quoting *Spengler*, 615 F.3d at 494; and then citing *Cantrell v. Nissan N. Am. Inc.*, 145 F. App'x 99, 105–06 (6th Cir. 2005) (a Title VII case)). There has been no indication that the Sixth Circuit has "deliberately intended to exclude FLSA retaliation cases from the scope of their holdings" in non-FLSA retaliation cases. *Pelham v. Unipres U.S.A., Inc.*, 129 F. Supp. 3d 582, 584 (M.D. Tenn. 2015); *see also Mansfield*, 706 F. App'x at 235 ("[Plaintiff's] Title VII and FLSA retaliation claims are governed by the same framework . . . ."). Thus, the Court may consider non-FLSA retaliation cases in its analysis.

For the causation element to be satisfied, "the plaintiff's burden entails . . . 'requiring [him] to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity and requiring the court to draw reasonable inferences from that evidence, providing it is credible." *Pettit*, 429 F. App'x at 533 (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). One way to demonstrate a causal connection is temporal proximity. *Mickey v. Ziedler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008); *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505–06 (6th Cir. 2014). While temporal proximity alone is not enough in every case, the Sixth Circuit has explained that in those cases "[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." *Mickey*, 516 F.3d at 525. In contrast, "where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple

13

temporal proximity with other evidence of retaliatory conduct to establish causality." *Id.* (citing *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 365 (6th Cir. 2001)); *see also Hill v. Herbert Roofing & Insulation, Inc.*, No. 13–cv–11228, 2014 WL 1377587, at *6 (E.D. Mich. Apr. 8, 2014) (applying *Mickey* to an FLSA retaliation claim). Here, Plaintiff alleges that on the morning of his termination, he complained to both Edgin and Greene that he had unpaid overtime hours. Following a discussion with Greene about these hours, Greene terminated his employment. The immediacy of the termination following the confrontation between Warren and Greene about his hours is sufficient for a reasonable juror to find a causal connection between the protected activity and the termination. *See id.*

      ii.  Defendant's Legitimate Reasons

Once an employee has satisfied his burden of establishing a prima facie case, the burden shifts to the employer "to articulate some legitimate, [non-retaliatory] reason for the employee's [discharge]." *McDonnell Douglas Corp.*, 411 U.S. at 802; *Mansfield*, 706 F. App'x at 236. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Tex Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–255 (1981) (citation omitted). Defendant has set forth two reasons for Plaintiff's discharge: (1) Plaintiff engaged in two alleged incidents of insubordination involving obscene outbursts; and (2) the County Commission was subjecting Solid Waste to a budget cut of $80,000 for the 2022–2023 fiscal year, due to an expected loss of revenue of almost $200,000. The Court accepts these as legitimate, non-retaliatory reasons for Warren's discharge.

      iii.  Pretext

"When an employer offers [non-retaliatory] reasons for an adverse employment action, the burden shifts back to the employee to prove that the stated reason for [his] termination is

14

pretextual." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 285 (6th Cir. 2012); *Mansfield*, 706 F. App'x at 236. To establish pretext, a plaintiff must demonstrate "that the defendant's articulated legitimate, [non-retaliatory] reason either: (1) lacks a basis in fact, (2) did not actually motivate [his] discharge, or (3) was insufficient to motivate [his] discharge." *Vincent v. Brewer Co.*, 514 F.3d 489, 497 (6th Cir. 2007) (citing *Tuttle v. Metro. Govt. of Nashville*, 474 F.3d 307, 319 (6th Cir. 2007)); *Mansfield*, 706 F. App'x at 236. He "must produce sufficient evidence from which the jury could 'reasonably reject [the defendants'] explanation' and infer that the defendants . . . did not honestly believe in the proffered [non-retaliatory] reason for its adverse employment action.'" *Mickey*, 516 F.3d at 526 (alterations in original) (quoting *Braithwaite v. Timken Co.*, 258 F.3d 488, 493–94 (6th Cir. 2001)); *Mansfield*, 706 F. App'x at 236. "To show an honest belief, 'the employer must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made.'" *Mickey*, 516 F.3d at 526 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 806–07 (6th Cir. 1998)). Finally, if an employer offers multiple reasons for an employee's discharge, "an employee 'must demonstrate that the employer's reasons (*each of them*, if the reasons independently caused [the] employer to take the action it did) are not true.'" *Smith*, 155 F.3d 799, 805–06 (6th Cir. 1998) (alteration and emphasis in original) (quoting *Kariotis v. Navistar Int'l Trans. Corp.*, 131 F.3d 672, 676 (7th Cir. 1997)).

As to Defendant's first legitimate, non-retaliatory reason, Plaintiff has put forth evidence to create a genuine dispute of fact that he engaged in the two alleged obscene outbursts that Defendant cites as the basis for his termination. Not only does Warren himself dispute that he used foul language toward Fesmire or Greene, Fesmire testified only to his aggravation during their encounter, not his yelling or swearing. (D.E. 34-5 at PageID 778.) Additionally, the discipline notice in the record alleging foul language was used in the encounter with Fesmire does not contain

15

Warren's signature and he testified at deposition that he never received the notice. (D.E. 34 at PageID 331–34; D.E. 34-7 at PageID 882.) Alternatively, Greene and Edgin both testified to Warren's yelling and swearing, and the affidavit submitted by Solid Waste employee Thomas Reed indicated the same. (D.E. 34-1 at PageID 496; D.E. 34-4 at PageID 667; D.E. 33-5 at PageID 134–35.) As to the June 10 phone call between Warren and Greene, Warren maintains that he never called Greene an obscene name, yet she testified to the opposite. (D.E. 34 at PageID 265, 354; D.E. 34-1 at PageID 524.) When considered in combination with the temporal proximity between Warren's protected activity and firing, the Court finds that Plaintiff has put forth sufficient rebuttal evidence to create a question for the jury as to whether Defendant acted "in reasonable reliance" on the "particularized facts" relating to this reason. *See Mickey*, 516 F.3d at 526.

However, Plaintiff has not put forth evidence to create a genuine dispute of fact that he was discharged for budgetary reasons. That the County Commission did not officially adopt the amendments to Solid Waste's budget until after Warren's termination does not change the undisputed fact that Greene and Edgin learned in March of 2022, well before the termination, that Solid Waste would be experiencing an $80,000 budget cut for the 2022–2023 fiscal year. (D.E.38-1 at PageID 919–20.) It is also undisputed that Solid Waste was expecting a loss of revenue of approximately $192,000 for the upcoming year. (D.E. 33-3 at PageID 132.) The record shows extensive discussions as to how Solid Waste might increase its revenue and there has been no evidence put forth that staff reductions were off the table.

Plaintiff argues that because the budgetary reason came in later in the litigation, this is evidence of pretext. He contends that Defendant's explanation went from "Discharged at will. Employee is no longer needed," to "abusive behavior and usage of profane language," to budget cuts. While Plaintiff is correct that changing rationales can demonstrate pretext, the record

suggests that Defendant was supplementing its explanations, rather than changing them, and does not demonstrate pretext. *Gaglioti v. Levin Grp., Inc.*, 508 F. App'x 476, 481 (6th Cir. 2012). The explanation given at the termination, "[e]mployee is no longer needed" can be read consistently with either of Defendant's proffered reasons and does not create a genuine issue of fact.

Plaintiff has not rebutted Defendant's second legitimate, non-retaliatory reason for his termination and has not shown pretext. His claim thus fails on this point.

IV.   Conclusion

For the reasons explained above, Defendant's motion for summary judgment is GRANTED. All settings are removed from the Court's calendar and all pending motions are DENIED AS MOOT.

IT IS SO ORDERED this 4th day of April 2025.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE